UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
Civil Action, File Number 15-cv-2028

| | |
|---|---|
| STEPHANIE MCKEEHAN<br>Plaintiff,<br><br>v.<br><br>HOME DEPOT USA, INC.<br>Defendant. | **COMPLAINT**<br>**and**<br>**DEMAND FOR JURY TRIAL** |

NOW COMES Stephanie McKeehan, by and through her attorney Alan F. Blakley of Polaris Law Group, and for her complaint alleges as follows:

PARTIES

1.  Stephanie McKeehan ("Stephanie") is and at all relevant times was a resident of the State of Colorado over 18 years of age.

2.  Home Depot U.S.A., Inc. ("HDUSA") is and at all relevant times was a corporation incorporated under the laws of the State of Delaware, with its principal place of business in Atlanta, Georgia. Consequently, HDUSA is a citizen of the states of Delaware and Georgia.

3.  HDUSA under its trade name of "Home Depot" operates its store # 1552 at 10858 Jake Jabs Boulevard, Firestone, Colorado ("Store").

## JURISDICTION

4. This Court has jurisdiction over all claims pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00.

## FACTS RELEVANT TO ALL CLAIMS

5. On June 6, 2014, Stephanie, her husband Tory "TJ" McKeehan (""TJ") and their young nephew were shopping at the Home Depot store # 1552 at 10858 Jake Jabs Boulevard, Firestone, Colorado.

6. After locating items that Stephanie and TJ wished to purchase, they approached a checkout lane in which there was no customer nor a line of waiting customers.

7. The cashier at that location, was in the space for customers, she looked down and then proceeded to move behind the counter to the space for her to check out Stephanie and TJ, without saying anything to Stephanie, TJ or their nephew.

8. During the checkout process another HDUSA employee got in line behind Stephanie, TJ and their nephew with a purchase.

9. While they were checking out, Stephanie took a step back from the counter, slipped in water on the floor and fell, shattering her wrist.

10. The HDUSA employee in line behind Stephanie told the cashier to call 911.

11. The cashier did not call 911.

12. TJ demanded that someone call 911.

13. While they were awaiting medical help, the cashier stated to TJ "I am so sorry, that lady in front of you had flowers that were leaking."

14. The cashier repeatedly stated that the lady who had preceded Stephanie, TJ and their nephew, but who was already out of the store prior to Stephanie's choosing that checkout

lane, had plants in her cart that spilled water on the floor.

15. On June 19, 2014, Stephanie's attorney sent a letter to the Home Depot Store # 1552 at 10858 Jake Jabs Boulevard, Firestone, Colorado, informing HDUSA that all evidence including surveillance videos and investigative files should be preserved because it would be relevant to potential litigation.

16. On June 26, 2014, Stephanie's attorney sent a letter to HDUSA at 2455 Paces Ferry Road SE, Atlanta, Georgia, informing HDUSA that all evidence including surveillance videos and investigative files should be preserved because it would be relevant to potential litigation.

17. On February 27, 2015, HDUSA and Stephanie engaged in mediation concerning her claim arising from her June 6, 2014 fall.

18. At the mediation on February 27, 2015, HDUSA displayed a surveillance video showing Stephanie's fall and the events leading up to the fall. HDUSA declined to provide a copy of the video to Stephanie.

19. The surveillance video, among other things, showed: a lady walking to the checkout line and the floor completely dry in the customer area as she arrived; the cashier coming from behind the counter and tilting plants in that lady's cart to scan them, spilling water onto the floor in the process; a trail of drops of water behind the lady as she exited the store; the cashier standing above the water and looking down at the water; a lapse of time during which the cashier took no steps to dry the floor or to call anyone to dry the floor or to place an obstruction over the water; Stephanie, TJ and their nephew approaching; the cashier's moving behind the counter; the cashier's facing another clerk and not paying attention as she starts to check Stephanie out; Stephanie's stepping back and falling.

20. The parties did not resolve the dispute on February 27, 2015 making litigation more likely.

21. On June 3, 2015, Stephanie's attorney sent another letter to the general counsel of HDUSA reminding it of the previous letters concerning spoliation and reiterating the instruction that no evidence including the surveillance video be destroyed or altered.

22. After the paramedics were able to stabilize Stephanie, they transported her to the emergency room.

23. Stephanie has had surgery on her wrist as well as other treatments and occupational therapy.

24. Stephanie continues to have pain in her wrist and may need additional surgery.

25. Stephanie has missed work, will miss more work, and may have a limited work-life expectancy due to her job's typing requirement.

26. To date, Stephanie has incurred over $80,000.00 in medical expenses and lost wages.

## COUNT I – PREMISES LIABILITY

27. The facts listed above show that HDUSA is liable to Stephanie for her injuries on its premises at 10858 Jake Jabs Boulevard, Firestone, Colorado.

28. At the time of Stephanie's injuries, the Store was open to the public.

29. Stephanie was an invitee at the Store at the time of her injuries.

30. Stephanie was injured on the premises.

31. The facts listed above show that at least one of HDUSA's employees knew of the spilled water that created a danger on the premises.

32. HDUSA's employees described above, as persons using reasonable care, should

have known that spilled water created a danger to people in Stephanie's position.

33. After causing the water spill and observing the spilled water, HDUSA's employees did not close the checkout lane, did not call for maintenance to clean the spill, did not attempt to clean the spill, did not warn Stephanie about the spill, did not place an obstruction over the spill.

34. After causing the water spill and observing the spilled water, HDUSA's employees failed to use reasonable care to protect against the danger on the property.

35. The conduct of HDUSA's employees described above occurred while they were on duty and working for HDUSA.

36. The conduct of HDUSA's employees is imputed to HDUSA.

37. HDUSA's conduct and the conduct of its employees was a cause of Stephanie's injuries, damages and losses.

## COUNT II – NEGLIGENCE

38. HDUSA owed a duty to Stephanie to protect her from dangerous conditions.

39. HDUSA owed a duty to Stephanie to warn her of the presence of unsafe conditions of which they were aware or using reasonable care should have been aware.

40. HDUSA is responsible for the acts and omissions of its employees.

41. HDUSA through its employees breached its duty, including, but not limited to the following (all of which are detailed in the facts described above): by causing water to spill; by failing to clean the spill; by failing to place warning signs over the spill; by failing to warn Stephanie about the spill; by failing to request someone to clean up the spill; by failing to close the checkout lane; by failing immediately to provide aid to Stephanie and call for outside medical assistance.

42. The breaches of duty as described above caused Stephanie to slip on the spill and injure herself.

43. Stephanie sustained injuries as a result of HDUSA's breach of duty.

### COUNT III – NEGLIGENT TRAINING

44. HDUSA has a duty to train employees in such a way as their actions will not create dangers to customers.

45. The facts described above show that HDUSA failed to train the employees identified above properly concerning causing spills and procedure following causing or discovery of a spill.

46. HDUSA's failure to exercise proper care in training the employees involved in the events described caused the injuries, damages and losses of Stephanie.

47. Stephanie was injured due to HDUSA's failure to exercise proper care in training the employees involved in the events.

### COUNT IV – NEGLIGENT SUPERVISION

48. HDUSA has a duty to supervise employees in such a way as their actions will not create dangers to customers.

49. The facts described above show that HDUSA failed to supervise the employees identified above properly concerning causing spills and procedure following causing or discovery of a spill.

50. HDUSA's failure to exercise proper care in supervising the employees involved in the events described caused the injuries, damages and losses of Stephanie.

51. Stephanie was injured due to HDUSA's failure to exercise proper care in supervising the employees involved in the events.

WHEREFORE, Stephanie prays the Court for the following relief:

A. Damages in an amount to be proved at trial to include medical expenses, loss of work, and other special damages, and general damages including but not limited to pain and suffering, loss of enjoyment of life;

B. Pre-judgment interest on medical expenses and all other amounts expenses;

C. Such other damages as this Court may deem just.

DATED THIS 16th day of September 2015.

/s/ Alan F. Blakley, Esq.
Alan F. Blakley
POLARIS LAW GROUP, LLC
916 South Main Street, Suite 201
Longmont, Colorado 80501
303 557 6488
fax 303 557 6487
ab@lawpolaris.com
Attorneys for Plaintiff

DEMAND FOR JURY TRIAL

NOW COMES Stephanie McKeehan, by and through her counsel and demands a trial by jury for all issues so triable.

DATED THIS 16th day of September 2015.

/s/ Alan F. Blakley, Esq.
Alan F. Blakley
POLARIS LAW GROUP, LLC
916 South Main Street, Suite 201
Longmont, Colorado 80501
303 557 6488
fax 303 557 6487
ab@lawpolaris.com
Attorneys for Plaintiff